SAMUEL FREEMAN, APPELLANT, V. CLYDA ELDER ET AL.,
APPELLEES.

63 N. W. 2d 327

Filed March 12, 1954. No. 33498.

*Melvin Moss,* for appellant.

*Walter C. Weiss, John L. Richards,* and *Keenan & Corbitt,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff Samuel Freeman and defendants Clyda Elder, Edith Elder, Eugene E. Elder, and Betty Jane Elder entered into a written contract whereby plaintiff agreed to buy and defendants agreed to sell a described quarter section of land in Thayer County, Nebraska, free and clear of all encumbrances except a described mortgage. Plaintiff brought this action against defendants seeking specific performance of the contract with abatement of the purchase price because, upon conveyance of the land to defendants, their grantor, the Federal Land Bank, had reserved to itself "one half of minerals, oil and fissionable material until the year 1964." Defendants demurred generally to plaintiff's amended petition which had a copy of the contract attached thereto and made a part thereof. The demurrer was sustained, and upon plaintiff's refusal to plead further the action was dismissed at plaintiff's costs. Plaintiff then appealed to this court, assigning that the trial court erred in so doing. We sustain that assignment.

In In re Estate of Halstead, 154 Neb. 31, 46 N. W. 2d 779, it was held that: "A general demurrer admits all allegations of fact in the pleading to which it is addressed, which are issuable, relevant, material, and well pleaded; but does not admit the pleader's conclusions of law or fact.

"A general demurrer tests the substantive legal rights of parties upon admitted facts, including proper and reasonable inferences of law and fact which may be drawn from facts which are well pleaded. If the petition states facts which entitle the plaintiff to relief, whether legal or equitable, it is not demurrable upon the ground that it does not state facts sufficient to constitute a cause of action." See, also, Johnson v. Marsh, 146 Neb. 257, 19 N. W. 2d 366; Lincoln Federal Labor Union v. Northwestern Iron & Metal Co., 149 Neb. 507, 31 N. W. 2d 477.

Also, in Valentine Oil Co. v. Powers, 157 Neb. 71, 59 N. W. 2d 150, we reaffirmed that: "In passing on a demurrer to a petition, the court will consider an exhibit attached thereto and made a part thereof, if the allegations stated therein either aid the petition in stating a cause of action or charge facts going to avoid liability on the part of the defendant."

In the light of such rules and others hereinafter discussed, we have examined plaintiff's amended petition. The contract duly executed and acknowledged by the parties on September 12, 1947, agreed that defendants would sell and plaintiff would buy the aforesaid land. The consideration therefor was $4,250, payable $750 cash, receipt of which was acknowledged. Further, plaintiff agreed to assume and pay a balance of $2,770.71, still owing by defendants on a recorded mortgage to the Federal Land Bank, together with interest thereon from September 12, 1947, and pay defendants the balance of $729.29 on September 12, 1948, with interest at 4 percent from September 12, 1947, to date of settlement. Defendants agreed to pay the 1946 and all prior taxes and the parties agreed to each pay one-half of the 1947 taxes. It was agreed that defendants should have all income from the 1946 crops and other income, but plaintiff was given immediate possession of the land for all purposes, including the right to plow and seed wheat in the fall of 1947. Defendants agreed to forthwith execute a warranty deed to plaintiff for the premises and de-

posit same, together with a copy of the contract, with the Thayer County Bank of Hebron, Nebraska, as escrow holder, until final settlement.

On payment of the balance of $729.29 with interest, and compliance with other provisions, such deed was to be delivered to plaintiff. Defendants agreed to furnish an abstract brought down to date of final settlement, showing title in them free from all encumbrances except the mortgage and one-half of the 1947 taxes, and deliver same to plaintiff or his attorney for preliminary examination by November 15, 1947.

However, on September 13, 1948, a supplemental contract was duly executed by the parties agreeing that in consideration of payment by plaintiff of $400 on the balance of $729.29 and interest thereon due September 12, 1948, then the date for payment by plaintiff of the difference thereof remaining unpaid with interest thereon, would be extended until September 12, 1949. It was then provided: "Subject only to the provisions of this supplemental agreement, the parties hereby ratify all of the terms of said original contract of September 12, 1947."

Plaintiff's amended petition alleged execution of the aforesaid agreement attached to and made a part of the petition; summarized its relevant material terms; and alleged performance by plaintiff of all things required therein by him until submission of the abstract by defendants, whereupon by examination thereof he discovered prior to September 12, 1949, the time for final settlement, that the Federal Land Bank in its conveyance of the land to defendants had made a reservation to itself of "one half of minerals, oil and fissionable material until the year 1964."

Plaintiff alleged that upon discovery of such deficiency of title he took the matter up with defendant's attorney and assisted him in an effort to secure from the Federal Land Bank a release of said reservation or a conveyance of its interest in the premises, but they

were unsuccessful. He alleged that prior to September 12, 1949, he informed defendants that he was ready and willing to pay the balance due and required of him by the terms of the contract, whereupon defendants' attorney waived tender of the balance due and advised plaintiff to hold said money until they could clear the title to the premises.

Plaintiff alleged that he could not place himself in status quo by rescinding the contract and asking for damages, but to save himself from irreparable loss must take such title as defendants could offer, and seek recovery from them of $1,600, the difference between the reasonable value of the title that could be conveyed and that which defendants contracted to give as an abatement of the purchase price.

He alleged that the balance of the purchase price as provided in the contract had been ready and unproductive in his hands ever since September 12, 1949, completion date of the contract, and that defendants upon demand have failed, neglected, and refused to tender a deed to plaintiff with any abatement of the purchase price for the aforesaid deficiency of title. Therefore, he prayed for specific performance of the contract with abatement, together with interest on such balance of his purchase money, and equitable relief. He also prayed for an allowance of attorney's fees, but cites no authority which could justify any allowance thereof.

We are unable to determine from the record upon what ground the trial court sustained defendants' demurrer and dismissed plaintiff's action. However, the briefs filed herein present two questions, to wit: (1) Did plaintiff's amended petition sufficiently allege performance of his obligations under the contract, and (2) should the demurrer to plaintiff's amended petition have been sustained, and specific performance with abatement have been thus denied by dismissal because it was patent from the allegations thereof that the nature of the subject matter, the terms of the contract, or the kind and

extent of the alleged defect were such that they furnished no basis upon which to ascertain the amount of compensation or abatement which could be allowed with any reasonable degree of certainty, and fixing the amount thereof would therefore be a mere matter of speculation?

As stated in 81 C. J. S., Specific Performance, § 131, p. 691: "The plaintiff in a suit for specific performance must by his pleading show that he has performed, or offered or tendered performance, or show a sufficient excuse for nonperformance or failure to tender or offer performance of those terms and conditions of the contract on his part to be performed prior to, or concurrent with, the performance by the defendant of the terms and conditions of the contract to be performed by him." See, also, 58 C. J., Specific Performance, § 484, p. 1161; 49 Am. Jur., Specific Performance, § 161, p. 184; 4 Pomeroy's Equity Jurisprudence (5th ed.), § 1407, p. 1050, § 1407a, p. 1051.

An examination of plaintiff's petition with the contract attached thereto discloses that he sufficiently alleged performance of his obligations imposed by the terms thereof, in conformity with the foregoing rule. In Fisher v. Buchanan, 2 Neb. (Unoff.) 158, 96 N. W. 339, relied upon by defendants, it was held: "Where, by the terms of a contract, the conditions to be performed by the respective parties are concurrent, the plaintiff, in an action for specific performance, must allege and prove performance, or a tender of performance, of the conditions on his part to be performed, or such facts as will show that such tender would have been unavailing." However, decision therein denying specific performance was predicated primarily upon the proposition that plaintiff had failed, when the case was tried on the merits, to adduce any evidence that he had performed or offered to perform the conditions contractually imposed upon him or to adduce any facts which would excuse his failure in that regard. The holding in that case cor-

rectly stated the rule, but decision therein was not predicated upon a demurrer to plaintiff's petition for failure to plead performance.

The second question is not as simple of solution as the first, but clearly in situations such as that pleaded at bar, specific performance with abatement could not be foreclosed by demurrer. Rather, whether or not there was any basis upon which to ascertain the amount of the compensation or abatement with any reasonable degree of certainty is a question of fact dependent upon the character or quality of evidence which may be adduced by plaintiff with relation thereto upon the merits rather than by judicial fiat. 81 C. J. S., Specific Performance, § 162, p. 777, states generally that: "In awarding damages, compensation, or abatement in price for partial nonperformance, the court may apportion the price and damages in accordance with the evidence." See, also, 58 C. J., Specific Performance, § 601, p. 1247.

As stated in Pomeroy's Specific Performance of Contracts (3d ed.), § 448, p. 923: "When the nature of the subject-matter, the terms of the contract, or the kind and extent of the defects are such that they furnish no basis upon which to ascertain the amount of the compensation with any reasonable degree of certainty, and the fixing the amount would, therefore, be a mere matter of speculation, a partial specific performance with compensation must be refused, even when demanded by the purchaser. The court will not apply this rule except in cases of real necessity, and prefers to grant compensation even when its measure cannot be exact, and the estimate must be rather approximate than certain."

As stated in Pomeroy's Specific Performance of Contracts (3d ed.), § 438, p. 903: "The general doctrine is firmly settled * * * that a vendor whose estate is less than or different from that which he agreed to sell, or who cannot give the exact subject-matter embraced in his contract, will not be allowed to set up his inability as a defense against the demand of a purchaser who is willing

to take what he can get with a compensation. The vendee may, if he so elect, enforce a specific performance to the extent of the vendor's ability to comply with the terms of the agreement, and may compel a conveyance of the vendor's deficient estate, or defective title or partial subject-matter, and have compensation for the difference between the actual performance, and the performance which would have been an exact fulfillment of the terms of their contract." In that connection, it is said in § 440, p. 908: "The existence of easements upon the land in favor of third persons, or of other similar rights which conflict with those of the owner, and which would prevent a vendor from forcing an acceptance upon an unwilling vendee, will entitle the purchaser at his election to insist upon a conveyance of the land subject to these rights, with such compensation or abatement from the price as shall be proportionate to the diminution in the value of the subject-matter. As for example, when the land is found to be subject to a right in a third person to dig for minerals or ores, the purchaser can demand a specific performance with compensation." Numerous authorities are cited in support of the foregoing sections. See, also, Eppstein v. Kuhn, 225 Ill. 115, 80 N. E. 80, 10 L. R. A. N. S. 117, and annotation appended thereto; 58 C. J., Specific Performance, §§ 56 to 59, pp. 901 to 904, citing numerous cases.

In 49 Am. Jur., Specific Performance, § 105, p. 123, it is said: "In actions by a vendee for the specific performance of a contract for the sale of real estate, where it appears that the vendor is unable to make a complete or perfect title, or that there is a deficiency in the quantity of land contracted to be sold, the general rule is that the vendee, if he so elects, is not only entitled to have the contract specifically performed to the extent of the vendor's ability to comply therewith by requiring him to give the best title he can or convey what he has, but he may compel the vendor to convey his defective title or deficient estate, and at the same time have a just abate-

ment out of the purchase price for the deficiency of title, quantity, or quality of the estate to compensate for the vendor's failure to perform the contract in full. The vendee, in other words, may waive full performance and accept such title as the vendor is able to give, and if he chooses to do so, he has a right to that and to an abatement, and the court will not hear the objection, by the vendor, that the purchaser cannot have the whole."

Also, as stated in 81 C. J. S., Specific Performance, § 21, p. 448: "Where the vendor is unable to convey the property which he has agreed to convey because of a defect in the quality or quantity of the estate which he possesses and the vendee has entered into the contract without knowledge or notice of the deficiency or defect in the vendor's title, he may, as a rule, have specific performance of the contract as to whatever interest the vendor has with such restitution or abatement as to the purchase price as may be determined by the court; but this rule will not be enforced where it would be productive of hardship or inequity or would have the effect of making a new contract between the parties."

Authorities cited and relied upon by defendants are generally entirely distinguishable upon the facts and law applicable thereto.

For reasons heretofore stated, we conclude that plaintiff's amended petition did state a cause of action and that the trial court erroneously sustained defendants' demurrer and dismissed plaintiff's action. Therefore, the judgment of the trial court should be and hereby is reversed and the cause is remanded for further proceedings in conformity with this opinion.

REVERSED AND REMANDED.